Reed *v.* Reed.

---

## HARRIET P. REED, APPELLANT, *v.* JOHN REED, RE-
### SPONDENT.

CONFLICT OF EVIDENCE.   Neither the findings of fact by a judge nor the
verdict of a jury will be disturbed on the ground of insufficiency of testimony,
in case of a conflict of testimony, unless the preponderance of evidence against
it be great and decided.

EXTREME CRUELTY.   The acts or character of treatment which will amount
to extreme cruelty sufficient to constitute a ground of divorce, must in a great
measure depend on the character of the respective parties, and the peculiar
circumstances of each case.

EXTREME CRUELTY WITHOUT PERSONAL VIOLENCE.   There may be extreme
cruelty without the slightest violence ; if it appear probable that the life of one
of the parties will be rendered miserable by any character of misconduct on
the part of the other, although no personal violence be apprehended, a separa-
tion should be decreed.

SINGLE ACTS OF VIOLENCE.   A mere act of violence, where there is no apprehen-
sion of its repetition, and which is the result of rashness rather than malignity,
does not furnish a ground of divorce on the ground of extreme cruelty, because
this relief is not granted to punish the party guilty of misconduct, but to re-
lieve the other party from future suffering or violence.

PROVOCATION OF VIOLENCE. A divorce will not be granted on the ground of extreme cruelty where it appears that the complaining party has willfully provoked the violence or misconduct complained of, unless such violence greatly exceeds the provocation.

APPEAL from the District Court of the Third Judicial District, Washoe County.

Action for divorce. From the findings of the Court below it appears that the parties were married on February 19th, 1866, and lived and cohabited together as husband and wife until March 6th, 1867 ; that on December 23d, 1866, defendant moderately corrected the child of plaintiff by a former husband by tying it, not to exceed five minutes, to a post on the porch of their house, and upon the interference of plaintiff, treated her person with some violence, but did her no serious physical injury ; that on March 6th, 1867, he treated plaintiff with considerable violence by beating and choking her, so that her face and throat were discolored and bruised, and on the same occasion she accidentally received a severe cut upon the head from a spade which the parties both had hold of and were struggling for, the result of which was confinement to her bed for ten days, but no permanent injury ; and that after the last named day the parties ceased to cohabit, but lived together in the same house, eating at the same table, frequently at the same time, and mainly of provisions belonging to the common stock.

The Court further found that on the occasion of the first difficulty, in December, 1866, the plaintiff provoked the defendant by persistently endeavoring to interfere and prevent him, with physical force and dictatorial language, from correcting the child, so that she was not in that matter blameless ; and that on the occasion of the second difficulty she needlessly and with force and provokingly committed several acts of interference against him while he was neither addressing her with abusive language or offering her personal violence, which provocation he at first resisted with mildness, but vigorously opposed force to force during the struggle and blows that ensued, she having first seized the shovel and menaced defendant with it. As a conclusion of law the Court found that the defendant had not treated the plaintiff with extreme cruelty, such as the statute contemplated as a ground for divorce, and that the

plaintiff had not shown that blamelessness which was the first requisite on the part of one seeking a divorce from the bonds of matrimony.

*William Webster*, for Appellant.

*Wallace and Flack*, for Respondent.

By the Court, LEWIS, J.

The plaintiff, upon the allegations of ill-treatment and extreme cruelty, asks a decree dissolving the bonds of matrimony existing between herself and the defendant.   After a full hearing of the evidence on both sides, the Judge below refused the relief prayed for.   From this ruling an appeal is taken, the plaintiff assigning as errors, 1st, that the findings of fact are not supported by the evidence; and 2d, that the facts as found entitle the plaintiff to a decree.   Upon both of these propositions our conclusion is adverse to plaintiff.   Her testimony, if it stood unexplained and uncontradicted, would perhaps have authorized findings in her favor, and entitle her to a judgment, but the material parts of it are contradicted and explained away by the defendant; and it must be admitted that his evidence fully supports the findings.   As the testimony is thus conflicting, and rather equally balanced, the findings cannot be set aside.   For, as we have frequently held, neither the findings of fact by a Judge in an action at law, nor the verdict of a jury will be disturbed upon the ground here taken, unless the preponderance of evidence against it be very great and decided.   (See cases referred to in *The State of Nevada* v. *The Yellow Jacket Company*, decided at the April term.)

The findings reported by the Judge below must therefore be received by this Court as the established facts of the case.   But do the facts thus found authorize a judgment in favor of plaintiff?   We think not.

The application for the divorce being founded upon the statutory ground of extreme cruelty, it becomes necessary to determine what acts or character of treatment will in the eye of the law amount to such cruelty.   This is a question which has often received the consideration of Courts, but as it is a matter which must in a great

measure be determined by the character of the respective parties, and the peculiar circumstances of each case, no general rule sufficiently comprehensive to embrace all cases can well be established. In the case of *Morris* v. *Morris*, (14 Cal. 76) this language is employed by the Court: " We construe the expression ' extreme cruelty,' as used in our statute, to mean the same thing as the *sævitia*, or cruelty of the English ecclesiastical Courts, and the offence may be defined in general terms to be any conduct in one of the married parties which furnishes reasonable apprehension that the continuance of the cohabitation would be attended with bodily harm to the other. Courts do not interfere in these cases so much to punish the offence already committed as to relieve the complaining party from an apprehended danger."

This is the general language of the books, and it will be observed that physical injury alone seems to merit consideration, whilst the subtle torture of mental anguish, unless occasioned by personal violence done or apprehended, is entirely overlooked. There may be extreme cruelty without the slighest violence—the happiness of a life may be destroyed by a course of conduct which could furnish no ground for apprehending bodily harm or injury. The rule as enunciated in *Morris* v. *Morris* furnished no redress for that more refined brutality which inflicts its violence upon the mind. In our judgment it is the effect and probable consequence of the misconduct complained of which should control the action of the Courts more than anything else. Hence, if it appear probable that the life of one of the parties is rendered miserable by any character of misconduct on the part of the other, although no personal violence be apprehended, or if there be reason to apprehend bodily harm, if the marriage relation be continued, the separation should be decreed. It is evident that much must be left to the discretion of the Court and jury in determining whether certain acts, or course of conduct, amount to extreme cruelty, for it is manifest from the nature of things that acts which would be extreme cruelty under some circumstances, would not be so under others ; and so, too, a course of conduct towards one person might be deemed extreme cruelty, which towards another would not be so considered by any one.

But in case of an act of violence, where there is no apprehension

of its repetition—when it is the result of rashness rather than malignity—or when the misconduct complained of is temporary and not likely to occasion continued suffering, the divorce should be denied; because this relief is not granted to punish the party guilty of the misconduct, but to relieve the other party from future suffering or violence.   The language of Pothier is very appropriate even under the statute of this State.   He says, in substance, a blow, or stroke of the hand, would not be a cause of separation under all circumstances, unless it was often repeated.   The Judge, he says, ought to consider if it was for no cause, or for a trivial one, that the husband was led to this excess, or if it was the result of provoking language on the part of the wife, pushing his patience to extremity. He ought also to consider whether the violence was a solitary instance, and the parties had previoustly lived in harmony.   (*Traite du contrat de mariage*, 509.)

Nor is a divorce ever granted where it appears that the party complaining willfully provoked the violence or misconduct complained of, unless such violence be extremely out of proportion to the provocation. (*Poor* v. *Poor*, 8 N. H. 308; 14 Cal. 76.)   Such is certainly a just and proper rule, for it would be revolting to every sense of right to award a divorce to a person founded upon the consequences of his or her own misconduct.

In this case, if it were conceded that the acts of violence found by the Judge below were, if unprovoked, sufficient to authorize a decree in favor of the plaintiff, the further finding that she provoked the ill-treatment upon both occasions deprives her of the right to relief.   At the first difficulty it is stated that the plaintiff, with physical force, persistently interfered with the defendant whilst he was moderately correcting their child, and so provoked him to the violence then committed.   It appears that this time the defendant treated the plaintiff with some violence, but did no serious physical injury.   With respect to the second difficulty it is found that the plaintiff was severely injured, but that " she needlessly and with force " provoked the defendant to the acts of violence committed by him, whilst he was neither addressing her with abusive language nor offering her any personal violence.

Such being the case, the plaintiff is not entitled to a decree.

For, as we have before said, a person is not entitled to a divorce for violence occasioned by his or her own misconduct. One who asks such a decree should come into Court blameless—or at least should show that the violence employed was out of proportion to the provocation offered.

The judgment below must be affirmed.