MARY G. PRICE, ADMINISTRATRIX OF THE ESTATE OF DELBERT GREEN, DECEASED, APPELLANT, v. M. C. SINNOTT AND HILDA SINNOTT, HUSBAND AND WIFE, DOING BUSINESS AS SINNOTT MOTEL, AND MARVIN F. PORTEOUS, DOING BUSINESS AS VALLEY PROPANE COMPANY, RESPONDENTS.

No. 5728

November 4, 1969          460 P.2d 837

*Flangas & Stone,* of Las Vegas, for Appellant.

*Richard P. Wait, Vargas, Bartlett and Dixon,* and *Steven T. Walther,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

Delbert Green, driving a diesel truck, on a trip from Phoenix, Arizona to Weed Heights, Nevada, stopped in Mina, Nevada, shortly after midnight on November 21, 1964 and registered at a motel owned by the respondents, M. C. Sinnott and Hilda Sinnott. He was assigned to room "N" and late that

afternoon his body was discovered in that room. The uncontradicted evidence revealed that he died of carbon monoxide poisoning. At the time his body was discovered there was a gas operated heater in the room burning at full capacity, and the bathroom window was open.

On November 23, 1964, George M. Hale, a safety inspector for the Liquefied Petroleum Board of Nevada, examined the heating and ventilation system of room "N". He found that combustion products from the heater were spilling into the room and that the vent pipe did not extend above the eaves of the building as required by statute and the regulations of the Liquefied Petroleum Board of Nevada, but instead terminated outside the exterior wall several feet below the eaves.

Although Hale found products of combustion spilling into room "N" he did not find any trace of carbon monoxide even with all the doors and windows closed. The respondent, Marvin F. Porteous, although aware that the vent to room "N" as well as the vents from many of the other rooms of the Sinnott Motel were not properly installed and maintained, continued to furnish propane gas to M. C. Sinnott for use at the motel.

Appellant Mary G. Price brought suit as administratrix of the Estate of Delbert Green against M. C. Sinnott and Hilda Sinnott, owners and operators of the Sinnott Motel, and Marvin F. Porteous, doing business as Valley Propane Company, who supplied liquefied petroleum gas to the Sinnots for use in the motel.

The case was tried before a jury which returned a verdict in favor of the defendants (respondents) and against the plaintiff (appellant). The appellant moved for a new trial upon grounds that: (1) There was a manifest disregard by the jury of the instructions of the court; (2) that the verdict was contrary to the evidence; and (3) that over the plaintiff's specific objection the court erred when it instructed the jury. The appellant's motion was denied.

This appeal is taken on the grounds that the district court (1) gave a prejudicial instruction to the jury, and (2) erred in denying appellant's motion for a new trial.

The present law of this state requires an innkeeper to operate his lodging establishment so as to reduce to a minimum the possibility of asphyxiation or gas poisoning. The evidence concerning the venting of the gas heater in room "N" as well as the death of Delbert Green in that room as a result of carbon monoxide poisoning show that the obligation was not met.

NRS 447.140[1] and NRS 590.525.[2] Holcomb v. Meeds, 246 P.2d 239 (Kan. 1952); Tomko v. Feldman, 194 A. 338 (Pa. 1937).

The respondent who supplied the gas to the motel admitted that he had observed the faulty venting of the gas heaters, that he had called this defect to the attention of certain operators of the motel and when the operators failed to correct the dangerous situation he continued to supply liquefied fuel. When a gas company acquires knowledge of a dangerous condition it is its duty to terminate the supply until the defect is corrected. Miller v. Wichita Gas Co., 33 P.2d 130 (Kan. 1934).

We turn to consider the contention that a prejudicial instruction was given. The instruction prompting the appellant's complaint involves the legal effect of a violation of a rule promulgated by the Nevada Liquefied Petroleum Gas Board. That rule provided that "natural draft vents extending through outside walls shall not terminate adjacent to outside walls or below eaves or parapets." The draft vent extending from room "N" terminated below the eaves of the motel and was in violation of the rule. The court instructed the jury that ". . . one who has knowledge of, or who, by the exercise of reasonable diligence, should have knowledge of, the fact that he is permitting gas appliances to operate in violation of the foregoing rules and regulations of the Nevada Liquefied Petroleum Gas Board is negligent as a matter of law. . . ."

The appellant's assertion of error in the instruction is based on the fact that knowledge of the rule is required before liability could be imposed, and urges that a violation of the rule gives rise to negligence *per se* without regard to knowledge

---

[1]NRS 447.140: "1. In every hotel built after July 1, 1957, any room in which a water closet, bathtub or shower is installed must be ventilated to the outside air by means of a window of at least 3 square feet, unless satisfactory mechanical ventilation is provided.

"2. In hotels built prior to July 1, 1957, without windows in the rooms containing water closets, bathtubs or showers, suitable ventilation shall be provided as required by the state health officer or his duly authorized agent."

[2]NRS 590.525: "All equipment shall be installed and maintained in a safe operating condition and in conformity with the rules, regulations and specifications adopted, promulgated and published by the board under NRS 590.515."

of the person charged. We agree that knowledge is not essential. However, we do not agree that a violation of an administrative regulation is negligence *per se,* since it lacks the force and effect of a substantive legislative enactment. Major v. Waverly and Ogden, Inc., 165 N.E.2d 181, 184 (N.Y. 1960); Prosser on Torts, 3rd ed., p. 203.

We prefer the rule that proof of a deviation from an administrative regulation is only evidence of negligence; not negligence *per se.* Neither is proof of compliance with such a regulation proof of due care as a matter of law, but rather, it is evidence of such care. Lightenburger v. Gordon, 81 Nev. 553, 583, 407 P.2d 728 (1965). This point of view best serves all interests since it accords appropriate dignity to administrative rules and concomitantly affords some leeway for those instances where the rule in issue may be arbitrary and its violation not necessarily unreasonable.

The jury instruction was, therefore, erroneous in advising that the rule violation was negligence *per se.* The error, however, benefited the appellant and could not have influenced the verdict for the respondents.

We next turn to consider whether the appellant is entitled to a new trial and we conclude that she is. NRCP 72(a).[3]

Initially we believe that there was indeed a manifest disregard by the jury of the instructions of the court and as a matter of law on that contention alone the trial court was obligated to grant a new trial.

As reasonable men know, carbon monoxide is not carried around in a flask from which a draught may be taken from time to time to maintain a comatose condition. The medical testimony in this case indicated that oxygen is the antidote for carbon monoxide. When Green checked into the Sinnott Motel he was away from any carbon monoxide producing agency and he was away from such agencies until he went to room "N" with its gas operated heater.

---

[3]NRCP 72(a): "Any appealable judgment or order in a civil action or proceeding may be appealed from and reviewed as prescribed by these rules, and not otherwise. Any party aggrieved may appeal, with or without first moving for a new trial, and the Supreme Court may consider errors of law and the sufficiency of the evidence, and may remand for new trial, whether or not a motion for a new trial has been made."

The giving of instructions to a jury is not merely a prefunctory act steeped in tradition. They are not given as a trap for the unwary or a springboard upon which error may be claimed. They are not given to be ignored. They must be meaningful, and they must be followed by the jury to arrive at a fair and impartial verdict. It is the duty of the jury to be governed by the instructions and when given they become the law of the case, whether right or wrong. If the jury does not follow them the verdict must be set aside as contrary to law. Had the jury followed the instruction on proximate cause[4] and applied that instruction, in conjunction with the instruction on negligence,[5] to the evidence it would have been impossible for them to reach the verdict which they reached in this case.

The trial judge is bound by his instructions, and on the motion for a new trial one of his inquiries should have been: Did the jury follow the instructions? Here it is apparent that the trial judge did not make that inquiry. The refusal of the trial court to set aside a verdict entered contrary to its instructions is an error of law and not within the mere discretion of the trial court. Stetson v. Stindt, 279 F. 209 (CCA3d).

In her motion for a new trial the appellant further contended that there was no evidence to sustain the verdict and that as to liability she was entitled to prevail as a matter of law and was at least entitled to a new trial for that reason.

The contention that liability was established as a matter of law was not presented to the trial court by an appropriate

---

[4]Instruction 23: "The term proximate cause means a cause which in a direct unbroken sequence produces the damage complained of and without which the damage would not have occurred. Negligence is the proximate cause of the damage when the damage is the natural or probable result of the negligence. Such negligence need not be the only cause, but it must be one of them and such as might have been reasonably foreseen as leading to damage of the general nature claimed in this case."

[5]Instruction 19: "Negligence is the doing of some act which a reasonably careful person would not do, or the failure to do something which a reasonably careful person would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. It is the failure to use ordinary care in the management of one's property or person."

motion under NRCP 50(a).[6] At the close of the case the plaintiff apparently believed that the dispositive issues were issues of fact for the jury to resolve. Even the issue of proximate cause is almost always an issue of fact rather than one of law. Barreth v. Reno Bus Lines, Inc., 77 Nev. 196, 198, 360 P.2d 1037 (1961). This is so whether the the negligence charged is negligence *per se* or ordinary negligence. Mahan v. Hafen, 76 Nev. 220, 225, 351 P.2d 617 (1960); Paso Builders, Inc. v. Hebard, 83 Nev. 165, 172, 426 P.2d 731 (1967). It is solidly established that when there is no request for a directed verdict, the question of the sufficiency of the evidence to sustain the verdict is not reviewable. Christensen v. Stuchlik, 427 P.2d 278 (Idaho 1967); Poland v. Parsekian, 195 A.2d 660 (N.J.App. 1963); Tsai v. Rosenthal, 297 F.2d 614 (8 Cir. 1961); Massaro v. United States Lines Company, 307 F.2d 299 (3 Cir. 1962); Harnik v. Lilley, 167 F.2d 159 (8 Cir. 1948). A party may not gamble on the jury's verdict and then later, when displeased with the verdict, challenge the sufficiency of the evidence to support it.

However, an exception to this rule is found where there is plain error in the record or if there is a showing of manifest injustice. DeFonce Construction Company v. City of Miami, 256 F.2d 425 (5 Cir. 1958). This case comes within the exception to the rule. The obvious disregard, by the jury, of the court's instructions resulting in a verdict which is shocking to the conscience of reasonable men is nothing short of manifest injustice. Of equal standing is the well-established rule that where there is a substantial conflict in the evidence the appellate court will not disturb the court below. However, since Reed v. Reed, 4 Nev. 395, was decided in 1868, this court has recognized an exception to that rule.

---

[6]NRCP 50(a): "A motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of the case. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury. If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted."

Dalton v. Dalton, 14 Nev. 419 (1880); Beck v. Thompson, 22 Nev. 109, 36 P. 562 (1894); Watt v. Nevada Cen. R. Co., 23 Nev. 154, 44 P. 423, 46 P. 52, 726 (1896); Smith v. Goodin, 46 Nev. 229, 206 P. 1067 (1922); Walker Brothers Bankers v. Janney, 52 Nev. 440, 290 P. 413 (1930); Consolazio v. Summerfield, 54 Nev. 176, 10 P.2d 629 (1932); Valverde v. Valverde, 55 Nev. 82, 26 P.2d 233 (1933); Stephens v. First Nat. Bank of Nevada, 65 Nev. 352, 196 P.2d 756 (1948); Davidson v. Streeter, 68 Nev. 427, 234 P.2d 793 (1951); Cram v. Wes Durston, Inc., 68 Nev. 503, 237 P.2d 209 (1951); Kitselman v. Rautzahn, 68 Nev. 342, 232 P.2d 1008 (1951).

In Watt v. Nevada Cen. R. Co., supra, the court said: "Notwithstanding the well-established rule which has been so often announced by this and other courts that, 'where there is a substantial conflict in the evidence the appellate court will not disturb the decision of the court below,' there is another rule as well established and of as binding force, both in actions at law and in equity, addressed to the conscience and judgment of the court of last resort, which cannot be ignored without doing violence to the plain principles of common justice in many cases, to wit: 'If there be no substantial conflict in the evidence upon any material point and the verdict or decision be against such evidence upon such point, or where the verdict or decision strikes the mind, at first blush, as manifestly and palpably contrary to the evidence, the supreme court will direct a new trial.' (Hayne, New Trial and Appeal, sec. 288, and citations; Barnes v. Sabron, 10 Nev. 217.)"

We believe that the manifest injustice in this case is clearly evident and that it falls within the exception to the general rule and we must direct the trial court to grant a new trial.

For the reasons cited we reverse this case and direct that the trial court grant a new trial.

COLLINS, C. J., and CRAVEN, D. J., concurring:

We concur in the authorities, reasoning and result announced in Mr. Justice Batjer's opinion. However, there are some additional reasons which should be expressed in order that the import of that opinion not be misinterpreted.

There is no doubt under present authority, as stated in Mr. Justice Thompson's dissent, that absent a motion for directed verdict under NRCP 50(a) we may not review the sufficiency of the evidence upon appeal. But that is not the issue on this appeal. Considering every miniscule part of evidence and testimony before the lower court, nothing refutes the physical facts

that Delbert Green died in Room N of the Sinnott Motel from carbon monoxide poisoning and the *only* source of that poison was the improperly vented gas wall heater. From the record on appeal before us, those physical facts are conclusive.[1] That is the only explanation of his death.

We seriously considered ordering the lower court to enter a judgment n.o.v. in favor of appellant on the issue of liability and remand of the case for retrial only upon the issue of damages. That action would have effectively precluded the difficulty suggested by Mr. Justice Thompson in the last paragraph of his dissent.

It is possible, however, on retrial defendants may be able to present additional evidence not presented in the first trial which conceivably could change the conclusiveness of the physical facts in the present record. We think, in fairness, they should be given that opportunity.

There would be extreme prejudice to a party in an unusual case such as this where counsel, through lack of legal appreciation, oversight or carelessness fails to make a motion for a directed verdict and judgment n.o.v., thereby ostensibly precluding us from reviewing the sufficiency of the evidence in the lower court. We are compelled to ameliorate the absoluteness of that interpretation of Rule 50 in the unusual situation presented by this case. That narrow exception is well stated by Mr. Justice Batjer in his opinion and supported by prior decisions of this court.

We believe that on retrial of this case counsel for plaintiff would not fail again to make a motion for a directed verdict and judgment n.o.v. if the evidence presented was virtually the same as in the first trial, thereby preserving for this court's consideration the sufficiency of the evidence.

THOMPSON, J., with whom ZENOFF, J., concurs, dissenting:

1. The result reached by the majority does not follow the reasoning expressed. The opinion holds that liability was established as a matter of law; that it was impossible for the jury to find for the defendants. If this is the case another trial on that issue should not be ordered. Such an order concedes that liability is a fact issue for jury resolution upon retrial. It is inappropriate to order another trial simply on the hope that a different result might be reached which will be more pleasing.

---

[1]Physical facts which speak the truth unerringly cannot be overcome by oral testimony. Hart v. Kline, 61 Nev. 96 at 101, 116 P.2d 672 (1941). See also Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65 (1915).

2. Liability is a fact question in this case. That question was fully explored and the jury found for the defendants. There is substantial evidence to support that determination. The evidence on proximate cause was conflicting. Delbert Green apparently died of carbon monoxide poisoning. It was the plaintiff's theory that only the improper venting of the gas heater in Green's motel room could explain the introduction of carbon monoxide into his system. Yet, it is uncontradicted that the bathroom window was open when the deceased was found. The plaintiff offered an expert witness who inspected and tested the heater on two different occasion shortly after the tragedy. He found no carbon monoxide present in the air on either occasion and concluded that the heater was not defective. These tests were made with the room closed, the windows and doors shut, and the heater turned to full capacity. The witness stated that "it would be conjectural" to conclude that carbon monoxide fumes emanated from the gas heater on the date of death. This is relevant and substantial evidence. It casts doubt upon the cause of death. The jury was free to accept that evidence and find that the plaintiff had failed to sustain her burden of proof on the issue of causation.

3. As noted in the majority opinion, the contention that liability was established as a matter of law was not presented to the trial court by appropriate motion under Rule 50. The failure to do so forecloses a challenge to the sufficiency of the evidence on appeal. The authorities cited in the majority opinion so declare. Having failed to move for a directed verdict on liability, the plaintiff was precluded from later moving for a judgment n.o.v. Lehtola v. Brown Nevada Corp., 82 Nev. 132, 412 P.2d 972 (1966). Despite her procedural default she suggests that we may now review the sufficiency of the evidence since she did move for a new trial upon that ground, among others. This suggestion is without substance since Rule 59 relating to new trials was amended in 1964 to eliminate as a ground for new trial "insufficiency of the evidence to justify the verdict." Sierra Pacific Power Co. v. Day, 80 Nev. 224, 391 P.2d 501 (1964). The purpose of that amendment was to preclude a trial court from substituting its view of the evidence for that of the jury in a case where the losing party had failed to move for a directed verdict, or the court on its own had not directed a verdict. If the trial court is precluded from granting a new trial in such a case, surely this court, further removed from the atmosphere of the trial, is foreclosed from granting such relief.

4. The key to the majority opinion is the statement "we

believe that the manifest injustice in this case is clearly evident . . ." This is a subjective evaluation of the evidence, an intrusion upon the jury function, and an activity in which this court should not engage. If the defendants win a second time and the matter is submitted for review, will the "injustice" continue to be "manifest?" Perhaps in that event a majority of this court will conclude that two trials of a fact question is about all that our system should offer. We believe that one trial is enough.